UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELBERT WELCH,

        Plaintiff,

        -v-

DR. ROBERT SNIDER, Clinton Correctional Facility;
MD AZIZ KURESHI, Arnot-Ogden Medical Center;
JAMES HOHENSE, Niagara County Jail;
SUPERINTENDENT CLARK, Niagara County Jail;
DR. 1997 DOE, Treating Dr. Elmira County; DR. 2000 DOE,
Treating Dr., Elmira Correctional Facility, et al.,[1]

        Defendants.

**DECISION AND ORDER**
12-CV-0326S



---

    Plaintiff, Elbert Welch, who is currently incarcerated at the Fishkill Correctional Facility but was incarcerated at the Gowanda Correctional Facility when he first filed this action in the United States District Court for the Northern District of New York, which later transferred the action to this Court, purportedly asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision and in the custody of Niagara County a number of

---

[1] Plaintiff has named over 30 defendants in this action--the court has not listed them all in the caption-- ranging from the Superintendent of the Niagara County Jail where he was detained as early as 1999 to the current Commissioner of the New York State Department of Corrections and Community Supervision. While, as discussed further below, both the basis of the transfer of this action to this Court and Welch's claims of "imminent danger of serious physical injury" was and arise from his confinement at the Gowanda Correctional Facility since 2010 and his allegation that he was not receiving proper medical treatment for his Hepatis C, Welch has not named one defendant at Gowanda who was allegedly personally involved in the alleged failed to treat his illness. For example, he names the Superintendents and Deputy Superintendents of a number of Correctional Facilities where he has been incarcerated at since 1999 and other supervisory officials within DOCCS' but no one that the Court can find among the thirty defendants and 50 plus paragraphs of the complaint who allegedly failed to treat him personally at Gowanda.

years ago. The Northern District of New York transferred the action to this Court, pursuant to 28 U.S.C. § 1404(a), on the basis that, assuming federal court jurisdiction exists and that Welch's complaint is not frivolous, the action could have been brought in this Court inasmuch as Welch alleges that he has been confined at Gowanda continuously since March 2010, and this District is "where many of the alleged constitutional violations occurred and where many of the individual defendants likely reside." (Docket No. 4, Transfer Order, at 3.)

As noted by the Northern District, Welch seeks leave to proceed *in forma pauperis* but is a serial litigator and has been found to have garnered "three strikes" under 28 U.S.C. § 1915(g), well over ten years ago. (Docket No. 4, Transfer Order, at 2, n.1, (citing *Welch v. Galie*, 207 F.3d 130, 132 (2d Cir. 2000). This, however, has not deterred Welch from continuing to bring frivolous suits in the federal courts in New York, including this one. Since the date plaintiff was first found to be subject to the three strikes rules of § 1915(g), he has filed at least fifteen civil rights actions seeking leave to proceed *in forma pauperis* in each. (Docket No. 4, Transfer Order, at 2, n. 1(citations omitted). A name search on this Court's Case Management and Electronic Case Filing System shows at least 29 cases filed by Welch in this Court alone, and at least nine of them have been dismissed for "strike" reasons. See *Welch v. Brown*, 08-CV-0765S, Docket No. 8, Decision and Order, at 2 (W.D.N.Y., November 18, 2008); *Welch v. Lt. Oldenburg*, 07-CV-0831S, Docket No. 4, Decision and Order, at 2 (W.D.N.Y., July 24, 2008). As of December 2008, Welch had filed at least 16 cases in the Northern District of New York since 1996. *Welch v. Charlan*,

2

No. 9:06-CV-0061 (GTS/DEP), 2008 WL 5382353, at 2 (N.D.N.Y., December 16, 2008) (adopting Report and Recommendation). Additionally, Welch has been barred from filing further actions in the Second Circuit and Northern District of New York without leave of court, *Welch v. Phelps*, No. 03-0045, Order (2d Cir. filed Oct. 7, 2003) (an order barring plaintiff from filing further appeals without first obtaining leave of court); *Welch v. Charlan*, 2008 WL 5382353, at 2 (N.D.N.Y., December 16, 2008) (same). Welch has also taken to disguising civil rights actions in the forms of petitions for writs of habeas corpus because the three strikes rules does not apply to petitioners seeking writs of habeas corpus. *Welch v. Fischer, et al.*, 08-CV-0764S, Docket No. 10, Order, at 3-4, n. 3 (W.D.N.Y., March 26, 2009).

The Court acknowledges that, unlike many of Welch's prior cases in which he was denied permission to proceed *in forma pauperis* pursuant to the three-strikes rule, Welch appears to at least attempt to allege in the instant complaint some non-conclusory facts relating to the issue of imminent danger--*i.e.*, a denial of medical treatment for Hepatitis C and liver damage beginning in 1997 and continuing throughout his confinement in the custody of DOCCS and Niagara County (Docket No. 1-1, Complaint, ¶ ¶ 1-2, 9-12, at 2)--, but as one examines the complaint more closely many of the allegations set forth therein again refer to a wide-ranging conspiracy or nefarious plot among DOCCS and others to kill him because of his

"status" as a federal witness and to poison him and contaminate his food as part of the plot. (*Id.*, ¶¶ 42-44, at 7-8.)[2]

Many, if not most, of Welch's prior cases, allege a vast wide-ranging conspiracy among many, including federal and state judicial, law enforcement, prosecutorial and correctional officials to kill him in a whole host of ways.[3] *See Welch v. Brown*, 08-CV-0765S, Docket No. 8, Decision and Order, at 3, n.1; *see also Welch v. Mukasey*, 589 F.Supp. 2d 178, 182 (N.D.N.Y., 2008) (collecting cases where Welch alleged a vast conspiracy to kill him); *Welch v. Samuels*, No. 02-CV-764, Dkt. No. 4, Decision and Order, at 3 (W.D.N.Y. Nov. 25, 2002)("The complaint describes a long-lived, extremely wide-ranging (plaintiff now includes 139

---

[2]Specifically, Welch alleges:

> Further, I have drawn the reasonably deducible inference from the deliberate delay/denial of timely and adequate medical treatment for my HCV/Liver damage and adequate medical treatment for my HCV/Liver damage and surrounding circumstances, that defendants intend to cause me serious physical harm and death; and that this situation exists at all NYS DOCS facilities that I have or have not been confined at. . . .
>
> Further, since being confined at Gowanda C.F. from March 2010 to the present, it has been brought to my attention that have been instances of surreptitious food poisos/contaminations of food served to me in Gowanda C.F. messhalls. I have on many occasions observed COs and inmates engage in coded language/conduct at times when I have been in line waiting to be served daily meals. I have also heard discussions between certain inmates and Cos regarding the food poison/contaminations while in general population at Gowanda C.F. (and other facilities). According to my understanding, some of the instances of food poison/contamination involved small amounts of cleaning fluids (i.e., bleach, germicide, etc.) on foods served to me. Such fluids are readily available to messhall workers."

(Complaint, 1-1, at ¶¶ 42-43, at 7-8.)

[3]In one case Welch alleged that he had been inflicted "'with serious illness of hepatitis C/Liver damage by DOCS and their bodily fluids and chemicals such as cleaning fluids to poison and contaminate foods served to [him] while in SHU or other cell confinement. DOCS employees are feigning a phony rescue plan if I am rendered unconscious by the venemous [sic] plot of conspirators while overlooking the fact that the food served is being contaminated in small amounts which conspirators have devised to avoid detection. The breads and other foods are often contaminated with liquid drops or smears which have been used for years by DOCS and co[-]conspirators while they all feign unawareness.'" *Welch v. Brown*, 08-CV-0765S, Docket No. 8, Decision and Order, at 3-4.

4

participants in the conspiracy), fantastic, and apparently hopelessly-inept conspiracy that has had plaintiff's death as its goal for the past twenty-some years."), *appeal dismissed* No. 02-0372-pr (2d Cir. Jan. 27, 2005)). In those cases, the courts found that Welch had not adequately alleged that he was in imminent danger of serious physical injury at the time he filed the complaint. *See, e.g., Welch v. Brown*, 08-CV-0765S, Docket No. 4, Decision and Order, at 3-4 ("To the extent that Plaintiff attempts to demonstrate that the 'imminent danger' requirement is satisfied by what he alleges that the defendants at the Orleans Correctional Facility have done or attempted to do to him in furtherance of the conspiracy, the Court finds that his allegations on their face are irrational and delusional."). Welch's allegations of imminent danger of serious physical injury in the instant complaint, while not as irrational or delusional on their face as some set forth in his previous cases, still fail, however, to rise to the level of a plausible claim of imminent danger and Welch's application to proceed *in forma pauperis* is, therefore, denied.

The Court by no means intends to downplay the significance of Welch's claimed illness--one he claims was inflicted upon him by DOCCS (*see* n. 3, *supra*)--, but the allegations of the complaint are again related to or stem from what Welch has continually and delusionally alleged is a conspiracy to have him killed; claims which in the past have been found to be insufficient to allege imminent danger of serious physical injury.

The Court finds, therefore, that Welch's well-pleaded allegations do not allege plausibly that he is in imminent danger of serious physical injury. *See Polanco v.*

*Hopkins*, 2007 WL 914023, at *3-5 (W.D.N.Y. March 23, 2007) (plaintiff had not alleged facts plausibly suggesting that he was in imminent danger of serious physical injury at the time be "brought" the action), *aff'd* 510 F.3d 152 (2d Cir. 2007).

Accordingly, Welch's motion to proceed *in forma pauperis is* denied and the complaint must be dismissed unless he pays the full filing fee of $350.00 by **December 5, 2012**.

## CONCLUSION AND ORDER

Plaintiff may be able to meet the statutory requirements of 28 U.S.C. § 1915(a). However, because plaintiff has had three or more "strikes" for purposes of 28 U.S.C. § 1915(g), the request to proceed *in forma pauperis* is hereby denied. Plaintiff has until **December 5, 2012** to pay the filing fee of $350.00 or the action will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(g), and without further order or notice to plaintiff.

If plaintiff fails to pay the filing fee by **December 5, 2012**, the Clerk of the Court is directed to close this case without prejudice without further order or notice to plaintiff.

IT IS SO ORDERED.

/s/ Richard J. Arcara
HONORABLE RICHARD J. ARCARA
DISTRICT JUDGE
UNITED STATES DISTRICT COURT

Dated: Nov. 6, 2012